UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT A. C. MURPHY,

      Plaintiff,

v.

RON NEAL, WARDLOW, CRAIG,
LOTT, and KAY,

      Defendants.

CAUSE NO. 3:21-CV-954-DRL-MGG

OPINION AND ORDER

Robert A. C. Murphy, a prisoner without a lawyer, filed a complaint that the court determined did not state a claim. ECF 11. He alleged that after he was attacked without provocation by another inmate, he was issued a conduct report for fighting and taken to segregation pending a hearing on the conduct report. He alleged that the conduct report should not have been issued because he was clearly not at fault and contested his placement in segregation. The court determined he did not state a claim based on the conduct report because "he does not have a constitutional right to be free from defending himself from an erroneous conduct report." ECF 11 at 2. Nor did his placement in segregation state a claim because "inmates have no liberty interest in avoiding short-term transfer to segregation even if they are subjected to harsher conditions as a result." *Id.* at 2. However, the court observed that, though Mr. Murphy could not challenge the segregation placement, the conditions of his cell there could amount to a constitutional violation, and he was given the opportunity to file an amended complaint.

Mr. Murphy filed an amended complaint, elaborating on the conditions he endured in segregation in Indiana State Prison's D-Cell House (DCH).[1] In addition, he attempts to hold several prison officials liable for the attack on him that led to his placement in DCH. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Murphy alleges that DCH is infested with several types of pests, including mice, mosquitoes, and a cockroach-type insect. ECF 17 at 33. He says the two cells he lived in had excrement smeared on the bars and walls, but he was not provided with cleaning supplies. *Id.* at 32-33. Further, he was there from June through September 2021, and the heat and humidity exacerbated his asthma, and his breathing was further worsened by repeated exposure to smoke from other inmates setting fires multiple times a week and from other inmates smoking drugs. *Id.* at 28, 33-34. Mr. Murphy alleges that he was denied the use of his personal fan, which would have mitigated the effect of the heat and humidity. *Id.* at 30-31. He alleges he saw mice crawling all over the food trays,

---

[1] Mr. Murphy includes as a defendant Cpt. S. McCann, but the only allegations against him relate to the issuance of the conduct report and Mr. Murphy's placement in segregation. For the same reasons given in the prior screening order, Mr. Murphy does not state a claim against him. *See generally* ECF 11.

2

in the showers, and on his bed while he was sleeping. *Id.* at 32-33. He says he was bitten several times by mice. *Id.* Mr. Murphy sues Warden Ron Neal, Lt. Lott, Counselor Craig, Major Wardlow, and Pest Control Officer Kay for monetary damages.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate

complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

Here, as alleged, Mr. Murphy spent several months in a cell that was covered in human excrement, infested with mice and insects, and felt unbearably hot, resulting in physical injuries and an exacerbation of his asthma. Prolonged exposure to infestations can amount to an Eighth Amendment violation. *See Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015). Mr. Murphy alleges facts showing the pests have been an issue for years in DCH, but the problem still persists. Moreover, the allegations of excrement on his cells contributes to unsanitary conditions of confinement. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (noting the combination of unhygienic conditions *and* failure to provide inmates a way to clean states a claim). Finally, Mr. Murphy has plausibly alleged that the oppressive heat and smoke showed DCH's ventilation was constitutionally inadequate. Mr. Murphy alleges that Warden Ron Neal, Lt. Lott, Counselor Craig, and Pest Control Officer Kay are each aware of this situation, but they took no action to fix it. Further, he alleges Major Wardlow, who worked in the property room, denied him access to his personal fan for no penological reason. He states an Eighth Amendment claim against them for unconstitutional conditions of confinement.

Mr. Murphy's remaining allegations do not state a claim. First, he complains about the medical care he received while in DCH. Specifically, he alleges that when he entered DCH, he was not given his inhaler or a prescription cream that he needed for a skin graft. ECF 17 at 26. He further alleges that he needed to be able to shower daily because the

graft can become easily infected and can fail if it dries out, but showers in DCH were allowed only every three days. *Id.*

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Here, Mr. Murphy has not alleged a serious medical need. He does not say how recently he received the skin graft, and the way to care for a skin graft changes over time. *See* MedlinePlus, Skin flaps and grafts – self-care, https://medlineplus.gov/ency/patientinstructions/000743.htm. He does not allege any harm besides discomfort from not having access to his skin cream or daily showers for about three months. Similarly, there is no explanation how not having his inhaler for three months harmed him.

Mr. Murphy also complains about the medical care he received from Nurse Block for what he claims were mouse bites. ECF 17 at 28. He alleges that his ankle swelled up and he developed a rash and red spots. *Id.* at 28-29. He says Nurse Block diagnosed him with athlete's foot, though he told her that he had felt and seen the mouse on him. *Id.* at 29. Her notes indicate that by the time she had seen him, he had tried using hydrocortisone on the rash but it did not help. ECF 17-1 at 10. She prescribed him an antifungal and told him to schedule another visit once he had left DCH. *Id.*

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

Here, Nurse Block examined Mr. Murphy and treated him for athlete's foot. If that was a misdiagnosis, the facts do not plausibly allege more than negligence, which does not state a constitutional claim.

Next, Mr. Murphy seeks to hold several prison officials responsible for failing to protect him from the attack that landed him in DCH in the first place. But his allegations do not state a claim. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As the Seventh Circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted).

Mr. Murphy was attacked by an inmate wielding a piece of floor grate that had come loose in the kitchen. He seeks to hold a group of "shakedown officers," including Officer Stanis, Officer Diacco, and John Doe Officers, liable because the officers noticed the loose floor grate during a May 2021 shakedown but did not have the unsafe condition remedied. ECF 17 at 5-6. However, notice of the loose floor grate does not reasonably imply these officers had "actual knowledge of an impending harm easily preventable." *Santiago*, 599 F.3d at 756. A loose floor grate, though it can be used as a weapon, is not such an obviously dangerous object that the officers would have known it had to be remedied right away, nor is the remediation as simple as confiscating a homemade knife or other personal item.

Mr. Murphy also seeks to hold Maintenance Director Art Kauffman, Deputy Warden Nowatske, Warden Ron Neal, Major Wardlow, and Lt. Williams responsible for the attack. ECF 17 at 7-17. None of these defendants are alleged to have actual knowledge of a specific risk to Mr. Murphy. Instead, he bases their potential liability on their positions as supervisory officials and a failure to remedy the unsafe floor grates or provide adequate staffing for what he says is an area of the prison that has a propensity for violence. *Id.* at 6. He contends they should have either added more staff, ensured the existing staff do rounds properly, or put the prison on lockdown. Although these defendants had the ability to carry out these solutions, the complaint does not plausibly

8

allege that any defendant knew of a substantial risk of harm to Mr. Murphy. Mr. Murphy alleges that the kitchen is an area with a propensity for violence because it is inadequately staffed, but his allegations do not show that violence in the kitchen is so pervasive that these defendants needed to act. *See Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (noting "substantial risk" includes "risks so great that they are almost certain to materialize if nothing is done"). Mr. Murphy cannot hold these officials liable for the attack.

Finally, Mr. Murphy complains that his assigned case worker, Officer Craig, did not provide him with grievance forms when requested and otherwise interfered with the grievance process. ECF 17 at 17-19. Though this may be relevant if defendants assert the affirmative defense of failure to exhaust administrative remedies, it does not state an independent constitutional claim. Mr. Murphy has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). An allegation that prison grievances were mishandled does not state an independent claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

For these reasons, the court:

(1) GRANTS Robert A. C. Murphy leave to proceed against Warden Ron Neal, Major Wardlow, Lt. Lott, Counselor Craig, and Pest Control Officer Kay in their

individual capacities for compensatory and punitive damages for holding him in unconstitutional conditions of confinement in Indiana State Prison's D-Cell House from approximately mid-June 2021 through mid-August 2021, due to a pest infestation, extreme heat, and smoke exposure in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES S. McCann, Pa. Williams, Art Kauffman, Diacco, Nowatzke, Cross, Block, Stanis, Shakedown Crew, and John Doe;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Major Wardlow, Lt. Lott, Counselor Craig, and Pest Control Officer Kay at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 17);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Major Wardlow, Lt. Lott, Counselor Craig, and Pest Control Officer Kay to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

August 16, 2022                              *s/ Damon R. Leichty*
                                                     Judge, United States District Court